# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHEN XIAO CHEN *et al.*, | : | |
| Petitioners, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-4462 |
| | : | |
| CONDOLEZZA RICE *et al.*, | : | |
| Respondents. | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                                                                    July ____, 2008

      Chen Xiao Chen, Huo Jin Li, Dan Chen, and Jun Chen bring this Petition for Writ of Mandamus and Complaint for Declaratory Judgment against Secretary of State Condolezza Rice, and Consul General Robert Goldberg of the U.S. Consulate in Guangzhou, China (the "Consulate").  Petitioners seek a writ of mandamus ordering the Consulate to grant Dan and Jun immigrant visas or a declaration that Dan and Jun are lawful permanent residents ("LPRs").  Respondents move to dismiss the case based on the court's lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim on which the court may grant relief under Rule 12(b)(6).  The court will dismiss the suit for lack of subject matter jurisdiction under Rule 12(b)(1) based on the doctrine of consular nonreviewability.

I.	**Facts and Procedural History**

Chen and Huo were born and married in China. Their two children were born in China: Dan was born on December 5, 1981; Jun was born on January 6, 1984. (Compl. ¶ 1.)[1] Chen traveled to the United States in the mid-1990s. (*Id.* ¶ 11.) In 1997, Chen's employer filed a Labor Certification Application on his behalf, which was approved in July 2001. (*Id.* at ¶¶ 11-12.) Arcadio Reyes, Chen's attorney, then filed an I-140 Immigrant Petition for Alien Worker naming Chen as the principal beneficiary and his wife and two children as derivative beneficiaries. (*Id.* at ¶ 12.) Chen's I-140 petition was approved on December 11, 2001, and his immigrant visa number became available on that date. (*Id.* at ¶ 13.) Throughout 2002, Chen continued to employ Reyes to process his application and those of his wife and children. (Compl. Ex. 2, Arcadio Reyes Aff. ¶¶ 5, 7.) In January 2002, Chen filed an I-485 Application to Register Permanent Residence or Adjust Status for himself. (Compl. ¶ 13.) By December 11, 2002, Chen had not filed an I-824 Application for Action on an Approved Application or Petition for Dan and Jun because, as Reyes explained, Immigration and Naturalization Service ("INS")[2] Service Centers required adjustment of the principal beneficiary's status as a prerequisite to the filing of I-824s for derivative beneficiaries. (Reyes Aff. ¶ 8.) On December 16, 2002, Chen adjusted his status to LPR. (Compl. ¶ 14.)

---

[1] The court will cite the Petition and Complaint as "Compl." throughout this memorandum and order.

[2] Congress has since transferred the INS's responsibilities to the Department of Homeland Security ("DHS"). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002).

During Chen's adjustment hearing, Immigration Judge William Strasser told Chen and Reyes that Chen's children would never age out of their eligibility because of the Child Status Protection Act ("CSPA"), Pub. L. No. 107-208, 116 Stat. 927 (2002) (codified at 8 U.S.C. § 1153(h)(1) (A)-(B)).[3] (Compl. ¶ 14.) The CSPA went into effect on August 6, 2002.[4] 8 U.S.C. § 1151 note. In February 2003, Reyes mistakenly mailed the I-824 to the Newark office of the INS. (Compl. ¶ 15.) The INS returned the forms, whereupon Reyes sent them to the INS Vermont Service Center in September 2004. (*Id.*)

On April 13, 2005, a consular officer at the Consulate withheld Dan's and Jun's visas. (*Id.* at ¶ 16.) The officer determined that Dan and Jun had aged out of their derivative beneficiary status on Chen's approved I-140 petition when they turned twenty one and that they were not eligible for protection under the CSPA because they had not sought to acquire LPR status within one year of visa availability—by December 11, 2002—as required by the CSPA. The Chens asked for reconsideration of the denial of their applications, asserting that the officer had incorrectly applied the CSPA to Dan and Jun. (*Id.* at ¶¶ 17-18.) The Chens argued, inter alia, that the officer failed to consider that the Chens sought to acquire status by hiring an attorney to file their childrens' applications. (Compl. Ex. 2, Letter from Kirk V. Wiedemer to

---

[3] The CSPA, which amended the Immigration and Naturalization Act ("INA"), provides the child of a principal alien granted immigrant status "the same status, and the same order of consideration" as the principal if the child is "following to join, the . . . parent." 8 U.S.C. § 1153(d). The CSPA defines an alien as a child for the requirements of 8 U.S.C. § 1101(b)(1) based on the alien's age on the "date on which an immigrant visa number became available for the alien's parent . . . , but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability." 8 U.S.C. § 1153(h).

[4] The Petition and Complaint states that the CSPA's effective date was August 2, 2002. (Compl. ¶ 21.) The discrepancy is immaterial to this case.

3

Chief, Immigrant Visa Unit, U.S. Consulate General Guangzhou (May 21, 2007) (citing *In re Kim*, No. A-77-828-503 (B.I.A. Dec. 20, 2004).)  The consular officer refused to reconsider their cases, noting that the CSPA provides a one-year window from visa availability and that "sought to acquire" requires filing a I-824 application.  (*E.g.*, Compl. Ex. 3, Email from Immigrant Visa Unit, U.S. Consulate General Guangzhou, to Kirk V. Wiedemer (July 18, 2007).)

The Chens then filed their Petition and Complaint.  They ask the court to "[d]eclare Petitioners Dan Chen and Jun Chen to be Lawful Permanent Residents of the United States, or in the alternative . . . [i]ssue an Order in Mandamus that the Respondents grant the immigrant visa applications of Petitioners Dan Chen and Jun Chen." (Compl., Prayer for Relief.)  Respondents presently move to dismiss the case.

## II.  Discussion

### A.  Standard of Review

Respondents challenge the court's subject matter jurisdiction under Rule 12(b)(1).  Petitioners bear the burden of proving that the relevant jurisdictional requirements are met.  *See Dev. Fin. Corp. v. Alpha Hous. & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995).  Where, as here, "there is a factual question about whether a court has jurisdiction, the trial court may examine facts outside the pleadings . . . '[b]ecause at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case.'"  *See Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  Consequently, petitioners' allegations need not be accepted as true.  *See id.* at 1021.

### B. Jurisdiction

This case raises the issue of whether the court may review a consular officer's decision to withhold immigrant visas from children claiming derivative beneficiary status because, as the consular officer determined, they were ineligible for protection from aging out of status under the CSPA. Petitioners assert that the court may review the nondiscretionary eligibility determination under either federal question jurisdiction over claims brought pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, or mandamus jurisdiction. The doctrine of consular nonreviewability and the discretion granted to consular officers, however, preclude the court from exercising jurisdiction over the case. Neither the Third Circuit's decision in *Pinho v. Gonzales*, 432 F.3d 193, 204 (3d Cir. 2005), which held that courts may review an agency's nondiscretionary eligibility determinations made within otherwise discretionary decisions over which the courts lack jurisdiction, nor the Congressional intent underlying the CSPA, provide the court with a basis for jurisdiction.

Petitioners argue first that the court has federal question jurisdiction under 28 U.S.C. § 1331. Federal question jurisdiction serves as the basis for federal court review of agency actions when the petitioner brings claims under the APA. *Califano v. Sanders*, 430 U.S. 99, 105 (1997); *Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988); *Yebouh v. Dep't of Justice*, 345 F.3d 216, 220 (3d Cir. 2003). The APA provides a right to judicial review, *see* 5 U.S.C. § 702,[5] of

---

[5] Section 702 provides in relevant part that:
A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. . . . Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground . . . .

final agency decisions, *see id.* § 704,[6] subject to limitations on the scope of that review and any remedy, *see id.* § 706.[7] *See Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 n.4 (1986). For the court to exercise jurisdiction, "the agency action must be final, it must adversely affect the party seeking review, and it must be non-discretionary." *Pinho*, 432 F.3d at 200. If the petitioner meets these criteria, the APA creates a presumption of federal question jurisdiction over agency actions. *See Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993).

The APA limits the court's review, however, "to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The APA also incorporates common law bars to the court's jurisdiction by providing that "[n]othing herein . . . affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground." § 702(1). In this case, as the consular officer's decision was final and adversely affected the

---

[6] Section 704 provides in relevant part that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." *See also Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967), *overruled on other grounds by Califano*, 430 U.S. at 107.

[7] Section 706 provides in relevant part that:
    To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall
        (1) compel agency action unlawfully withheld or unreasonably delayed; and
        (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
            (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
            (B) contrary to constitutional right, power, privilege, or immunity;
            . . . .
            (D) without observance of procedure required by law;
            . . . .

Chens, the court's federal question jurisdiction hinges on whether the consular officer's decision to withhold Dan's and Jun's visas on the grounds of statutory ineligibility was discretionary under 8 U.S.C. § 1153(d) and (h).

Petitioners also argue that the court has mandamus jurisdiction under § 1361.[8] Mandamus jurisdiction "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616-17 (1984). Issuance of a writ of mandamus is an "extraordinary remedy." *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (U.S. 1988). As the Chens exhausted the only available avenue of relief by seeking reconsideration by the Consulate, (*see* Compl. ¶¶ 9, 17-18 & Exs. 2-5, 7-8), the court's mandamus jurisdiction, as with federal question jurisdiction, turns on whether the consular officer's withholding of Dan's and Jun's visas on the grounds of statutory ineligibility was contrary to a clear nondiscretionary duty.

Respondents argue that the common law doctrine of consular nonreviewability bars the court's jurisdiction. Under the doctrine of consular nonreviewability, federal courts lack subject matter jurisdiction to review a consular officer's issuance or withholding of visas. *See, e.g.*, *Bruno v. Albright*, 197 F.3d 1153, 1160 (D.C. Cir. 1999); *Doan v. INS*, 160 F.3d 508, 509 (8th Cir. 1998)*; Haitian Refugee Ctr. v. Baker*, 953 F.2d 1498, 1507 (11th Cir. 1992); *Centeno v. Shultz*, 817 F.2d 1212, 1214 (5th Cir. 1987); *Ventura-Escamilla v. INS*, 647 F.2d 28, 30 (9th Cir. 1981); *Burrafato v. Dep't of State*, 523 F.2d 554, 556-57 (2d Cir. 1975). The Third Circuit has not ruled on the doctrine of consular nonreviewability, although at least one district court in this

---

[8] Section 1361 provides, "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

jurisdiction found it applicable to bar jurisdiction. *See Sabataityte v. Powell*, No. 04-4130, 2004 WL 2203708, at *2 (E.D. Pa. Sept. 27, 2003) (dismissing for lack of jurisdiction a petition for a writ of mandamus asking the court to order readjudication of a visa application).

The doctrine is based on the courts' recognition that "the power to expel or exclude aliens [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n.21 (1976) (citing *Fong Yue Ting v. United States*, 149 U.S. 698, 713 (1893)). In *Lem Moon Sing v. United States*, 158 U.S. 538, 547 (1895), the Supreme Court expressed its position:

> The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come into this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications.

*See also Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972). Subsequently, lower federal courts applied this holding to establish the doctrine of consular nonreviewability in a wide variety of cases, including cases alleging legal error, *see Centeno*, 817 F.2d at 1213 (alleging that the consul's decision was not authorized by the INA); *Grullon v. Kissinger*, 417 F. Supp. 337, 339-340 (E.D.N.Y. 1976) (alleging that the consul erroneously interpreted and applied the INA), *aff'd* 559 F.2d 1203 (2d Cir. 1977); failure to following applicable regulations, *see, e.g.*, *Burrafato*, 523 F.2d at 557 (alleging that the State Department failed to follow its own regulations); *Ventura-Escamilla*, 647 F.2d at 31-32 (challenging the validity of the applicable regulation); *Garcia v. Baker*, 765 F. Supp. 426, 428 (N.D. Ill. 1990) (alleging that the consul failed to follow a binding legal interpretation of the INA); procedural irregularity, *see, e.g.*,

*Romero v. Consulate of United States*, 860 F. Supp. 319, 324 (E.D. Va. 1994) (alleging procedural irregularities in the consul's decisionmaking process); factual error, *see, e.g.*, *Loza-Bedova v. INS*, 410 F.2d 343, 347 (9th Cir. 1969) (alleging that the consul acted on erroneous information); and unreasonableness, *see, e.g.*, *United States ex rel. London v. Phelps*, 22 F.2d 288, 290 (2d Cir. 1927) (challenging the consul's reasonableness).

The Court of Appeals for the District of Columbia Circuit in *Bruno v. Albright* upheld the doctrine of consular nonreviewability to bar the district court's jurisdiction to review a consular officer's visa decision for a claim brought pursuant to the APA. 197 F.3d at 1158. It concluded that "[w]hether analyzed in terms of § 702(1), or in terms of § 701(a)(1), the conclusion is the same—the district court rightly held that it could not entertain [the petitioner's] lawsuit." *Id.* Respondents argue that *Bruno*'s analysis of these preclusion of review provisions—§ 701(a)(1) and § 702(1)—applies with equal force to forbid the court from exercising jurisdiction in this case.

In terms of § 701(a)(1), "[w]hether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984). Although the INA does not expressly remove the decision to issue or withhold visas from court review, it provides for the exercise of significant discretion by the consular officer. *See* 8 U.S.C. § 1201(a)(1) (providing that the consular officer may issue a visa)[9] and (g) (providing that the consular officer

---

[9] Section 1201(a)(1) provides in relevant part that:
Under the conditions hereinafter prescribed and subject to the limitations prescribed in this chapter or regulations issued thereunder, a consular officer *may*

9

shall not issue a visa if it appears to him that the alien is ineligible).[10]  Furthermore, the INA expressly precludes the Secretary of State from reviewing consular visa determinations.  *See* 8 U.S.C. § 1104(a) (granting the Secretary of State control over administration and enforcement of the immigration laws "relating to (1) the powers, duties, and functions of diplomatic and consular officers of the United States, except those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas").  In addition, as the *Bruno* court noted, given the extensive historical deference to consular visa decisions, "Congress could safely assume that aliens residing abroad were barred from challenging consular visa decisions in federal court unless legislation specifically permitted such actions."  197 F.3d at 1159-62; *see also Ventura-Escamilla*, 647 F.2d at 30-31 (recalling the congressional history of the INA, which rejected a proposal to create a "semijudicial board, similar to the Board of Immigration Appeals,

---

>    *issue* (A) to an immigrant who has made proper application therefor, an immigrant visa . . . .

(emphasis added).  The use of the phrase "may issue" suggests that Congress granted discretion to consular officials.  *See Haig v. Agee*, 453 U.S. 280, 294 n.26 (1981) (concluding that the word "'may' expressly recognizes substantial discretion").

[10] Section 1201(g) provides in relevant part that:
>    No visa or other documentation shall be issued to an alien if (1) it *appears to the consular officer*, from statements in the application, or in the papers submitted therewith, *that such alien is ineligible to receive a visa* or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) *the consular officer knows or has reason to believe* that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law. . . .

(emphasis added).  As with § 1201(a)(1), Congress's choice of the phrases "appears to the consular officer" and "the consular officer knows or has reason to believe" suggests a grant of discretion to the consular officer.

with jurisdiction to review consular decisions pertaining to the granting or refusal of visas" (quoting H.R. Rep. No. 82-1365 (1952), *as reprinted in* 1952 U.S.C.C.A.N. 1653, 1688)).

Under § 702(1), too, the consular officer's decision to issue or withhold a visa is not reviewable. The "other limitations" to jurisdiction language in § 702(1) refers to, inter alia, both "action committed to agency discretion" and "express or implied preclusion of judicial review." H.R. Rep. No. 94-1656, at 12 (1976) (documenting that § 702 was "not intended to affect or change defenses other than sovereign immunity"). Thus, under this section, courts should "still refuse 'to decide issues about foreign affairs, military policy and other subjects inappropriate for judicial action.'" *Bruno*, 197 F.3d at 1158 (citing 1 Recommendations and Reports of the Administrative Conference 195, 225). In *Bruno*, the court concluded that the doctrine of consular nonreviewability was related to the conduct of foreign relations and predated the passage of the APA, and so the doctrine was a "limitation on judicial review" incorporated into § 702(1). 197 F.3d at 1159. Considering the weight of the authority from the other courts of appeals cited above,[11] and *Bruno*'s persuasive analysis, the court holds that the doctrine of consular nonreviewability qualifies under both APA § 701(a)(1) and § 702(1) to preclude the court's review of consular visa decisions.[12]

---

[11] *See Doan*, 160 F.3d at 509; *Haitian Refugee Ctr.*, 953 F.2d at 1507; *Centeno*, 817 F.2d at 1213; *Ventura-Escamilla*, 647 F.2d at 30; *Burrafato*, 523 F.2d at 556-57; *Loza-Bedova*, 410 F.2d at 347; *London*, 22 F.2d at 290.

[12] The narrow exceptions to the doctrine, not relied on by petitioners, are inapplicable to this case. In *Patel v. Reno*, the Ninth Circuit, exercising mandamus jurisdiction, concluded that the doctrine of consular nonreviewability does not apply to the duty "of the consul to take . . . an action as opposed to a decision taken within the consul's discretion." 134 F.3d 929, 931-32 (9th Cir. 1997). In this case, petitioners cannot argue that the consular officer failed to act. Although the court in *Patel* in dicta suggested other exceptions to the doctrine, petitioners have not argued their applicability here.

Petitioners contest the applicability of the doctrine of consular nonreviewability, relying on the distinction between discretionary decisions, which the courts may not typically review, and statutory eligibility determinations within the broader discretionary decisions, which courts may review. In the immigration context, the Third Circuit has distinguished statutory eligibility determinations from discretionary decisions to approve or deny immigration applications. *Cf. Pinho*, 432 F.3d at 204 (holding that "[d]etermination of *eligibility* for adjustment of status—unlike the *granting* of adjustment itself, is a purely legal question and does not implicate agency discretion"); *accord, e.g.*, *Sepulveda v. Gonzales*, 407 F.3d 59, 63 (2d Cir. 2005) (holding that the INA's bar to judicial review of discretionary determinations "does not bar judicial review of nondiscretionary, or purely legal, decisions"). In *Pinho*, the Third Circuit considered whether a vacated state conviction was a bar to eligibility for adjustment to LPR status. 432 F.3d at 195. When considering the discretion accorded to the administrative officer, the court noted that

> It is important to distinguish carefully between a denial of an application to adjust status, and a determination that an immigrant is legally ineligible for adjustment of status. This distinction is central to the question of subject-matter jurisdiction, and is easy to elide. Indeed, such distinctions are crucial to administrative law generally; the framework of judicial review of agency action that has evolved over the past half-century is grounded in a sharp distinction between decisions committed to agency discretion, and decisions, whether "ministerial" or "purely legal," governed directly by the applicable statute or regulation.

*Id.* at 203. The court then held that "[d]etermination of eligibility for adjustment of status—unlike the granting of adjustment itself—is a purely legal question and does not implicate agency discretion."[13] *Id.* at 204. In this case, the consular officer determined that Dan and Jun

---

[13] The court concluded that "[t]o treat all denials of adjustment as discretionary, even when based on eligibility determinations that are plainly matters of law, is to fundamentally misunderstand the relationship between the executive and the judiciary." *Id.* at 203.

were not eligible to receive visas under the CSPA, (*see* Compl. Ex. 1), because they had not "sought to acquire the status of . . . alien[s] lawfully admitted for permanent residence within one year of [the principal immigrant's visa's] availability," *see* § 1153(h)(1)(A). Petitioners contend that the consular officer erred as a matter of law in applying the one-year window of opportunity to seek to acquire adjustment to LPR status and that the determination of eligibility under § 1153(h) is not discretionary. Thus, under *Pinho*, petitioners seek review of the consular's denial of the visas because it was predicated solely on ineligibility under the statute.

The court concludes that the Third Circuit's distinction in *Pinho* between statutory eligibility determinations and discretionary denials of relief is inapplicable to visa denials by consular officials. As noted above, Congress has delegated the discretion to issue and withhold visas to consular officials subject to the conditions and limitations prescribed in the relevant statute and regulations. *See* § 1201(a)(1), (g). Section 1201(g) mandates that the consular officer refuse to issue the visa if it "appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under . . . any . . . provision of law." Congress's use of the discretionary language "it appears to the consular officer" confers the determination of eligibility or ineligibility on that officer. This textual commitment of the eligibility determination to the consular officer undermines the applicability of *Pinho* to this case because it establishes the consular officer's authority to make the eligibility determination based on the officer's subjective review of the record.[14] Because *Pinho* is not applicable in the context of consular visa decisions,

---

[14] To the extent that this delegation places a determination of a purely legal question outside of the purview of the judiciary, in contravention of the Third Circuit's admonishment that the distinction between discretionary and legal determinations is fundamental to the relationship between the executive and the judiciary, *see Pinho*, 432 F.3d at 203, this result is no less implicated by the courts of appeals cases applying the doctrine of consular nonreviewability to

the court does not have federal question jurisdiction over petitioner's APA claims.  The result is the same for mandamus jurisdiction, as the only nondiscretionary duty of the consular officer is to act—the consular officer must issue or deny the visas, but has complete discretion as to which option to exercise.  *See Patel*, 134 F.3d at 932-33 (holding that the consular officer's suspension of visa applications contravened his legal duty to act on the visa applications).  In this case, the consular officer exercised his discretion in the negative.

Petitioners next argue that the CSPA undermines the doctrine of consular nonreviewability's applicability to covered eligibility determinations.  Petitioners must either prove (1) that the court has federal question jurisdiction by showing that Congress intended the CSPA to subsume the APA's preclusion of review provisions and subject consular officers to the jurisdiction of the courts, or (2) that the court has mandamus jurisdiction by showing that Congress intended the CSPA to mandate that the consular officer issues the visa to statutorily eligible applicants.  Petitioners argue (1) that Congress's intent in passing the CSPA undermines the inferences on which the *Bruno* court based its decision that the doctrine of consular nonreviewability was incorporated into the INA, and (2) that Congress could not have intended to deny to courts the authority to review eligibility determinations by consular officers but grant them the authority to review the exact same determinations by U.S.-based officials, a violation of equal protection.  While these arguments have some force, the court concludes that the CSPA does not alter the jurisdictional outcome of this case.

---

legal and statutory challenges, *see, e.g.*, *Centeno*, 817 F.2d at 1213; *Ventura-Escamilla*, 647 F.2d at 31-32; *Burrafato*, 523 F.2d at 557.

The CSPA was passed to expedite the unification of qualifying derivative family members of United States citizens and legal permanent residents, which had been delayed by processing backlogs. Those backlogs caused qualifying children to age out of their eligibility for derivative immigration status while they waited for agency action. *See Padash v. INS*, 358 F.3d 1161, 1172-73 (9th Cir. 2004). The purpose of the CSPA was to "address the predicament of these aliens, who through no fault of their own, lose the opportunity to obtain [a] . . . visa." H.R. Rep. No. 107-45, at 2 (2002), *as reprinted in* 2002 U.S.C.C.A.N. 640, 641; see *also Padash*, 358 F.3d at 1172. Nowhere in the CSPA, however, did Congress change the discretionary authority granted to consular officers to issue or withhold visas. Nor did Congress subject those decisions to judicial review, despite the long-existing doctrine of consular nonreviewability. The CSPA changed the applicable rules, but not the nature of the administrative action.

Petitioners' equal protection arguments are unavailing.[15] They contend that Congress would not "countenance prohibiting judicial review of wrongful consular officer determination of CSPA eligibility[] (i.e., eligibility for adjustment of status), yet allow judicial review of adjustment of status decisions by [Department of Homeland Security–Citizenship and Immigration Services] or by the Attorney General." (Pet'rs' Br. Opp'n to Resps' Mot. Dismiss 12.) Yet, that exact topology has existed for as long as the doctrine of consular nonreviewability has been in effect. Prior to the CSPA, courts could not review consular officers' visa decisions, even if contrary to statute or regulation, although they reviewed comparable decisions made by DHS officials and the Attorney General. *See, e.g.*, § 1201(g) (mandating consular officer's

---

[15] This argument assumes that out-of-country visa applicants have standing to bring an equal protection claim. Because neither side has argued the issue, the court will not consider it.

review of eligibility criteria under 8 U.S.C. § 1182); 8 U.S.C. § 1229a (granting immigration judges the same authority); 8 U.S.C. § 1229b (granting the Attorney General the same authority). Petitioners thus may not challenge the doctrine as a violation of equal protection rights.[16]

### III.    Conclusion

Exercising jurisdiction over this case would run counter to the well-established doctrine that federal courts will not review a consular officer's decision to issue or withhold a visa. The court cannot, therefore, exercise either federal question or mandamus jurisdiction. Lacking jurisdiction, the court will dismiss the case. An appropriate order follows.

---

[16] The court is nonetheless sympathetic to petitioners' argument. Considering the *Pinho* precedent, the court questions the applicability of the heavily criticized doctrine of consular nonreviewability to eligibility and other statutorily defined determinations, particularly where the court could review the exact same determination if made by a DHS official inside the United States. *See Ahmed v. DHS*, 328 F.3d 383, 388 (7th Cir. 2003) (noting that none of the consular nonreviewability cases dealt with a program "under which the responsibilities of the embassies abroad are equivalent to those of the . . . the Department of Homeland Security . . . inside the United States," but reserving consideration for a case wherein the doctrine of consular nonreviewability is the only applicable bar to the court's jurisdiction). *See generally, e.g.*, James A. R. Nafziger, *Review of Visa Denials by Consular Officers*, 66 Wash. L. Rev. 1, 14 (1991) (criticizing the doctrine); Leon Wildes, *Review of Visa Denials: The American Consul as 20th Century Absolute Monarch*, 26 San Diego L. Rev. 887, 888 (1989) (same); Sam Bernsen, *Consular Absolutism in Visa Cases*, 63 Interpreter Releases 388 (1986) (same); Maria Zas, Comment, *Consular Absolutism: The Need for Judicial Review in the Adjudication of Immigrant Visas for Permanent Residence*, 37 J. Marshall L. Rev. 577 (2004) (same). However, without guidance from the Third Circuit, the court will not render a decision inconsistent with well-established precedent from every court to consider the issue. Petitioners have not identified a single case in which a court exercised jurisdiction to review a consular officer's decision to withhold a visa from a visa applicant at a Consulate in a foreign nation. Nor has the court.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHEN XIAO CHEN, *et al.*, | : | |
| Petitioners, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-4462 |
| | : | |
| CONDOLEZZA RICE, *et al.*, | : | |
| Respondents. | : | |

## Order

     **AND NOW** on this _____ day of July 2008, upon consideration of respondents' motion to dismiss (Doc. No. 8) and petitioners' response, **IT IS HEREBY ORDERED** that respondents' motion is GRANTED, and the Petition for Writ of Mandamus and Complaint for Declaratory Judgment is DISMISSED for lack of jurisdiction. The Clerk shall close this case statistically.

                                                               __s/ William H. Yohn Jr.____
                                                                William H. Yohn Jr., Judge